UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN LINDLAND, an individual,<br><br>　　　　　　　　Plaintiff,<br><br>v.<br><br>TUSIMPLE, INC.,<br>a California corporation; and<br>DOES 1–100, inclusive,<br><br>　　　　　　　　Defendants. | Case No.: 21-CV-417 JLS (MDD)<br><br>**ORDER DENYING WITHOUT PREJUDICE DEFENDANT'S MOTION FOR ORDER FOR CHOICE OF LAW DETERMINATION AND DENYING REQUEST FOR JUDICIAL NOTICE IN SUPPORT THEREOF**<br><br>(ECF Nos. 13, 13-2) |

　　　Presently before the Court is Defendant TuSimple, Inc.'s ("Defendant" or "TuSimple") Motion for Order for Choice of Law Determination ("Mot.," ECF No. 13). Also before the Court are Defendant's Request for Judicial Notice in support thereof ("RJN," ECF No. 13-2), Plaintiff John Lindland's ("Plaintiff" or "Mr. Lindland") Opposition to the Motion ("Opp'n," ECF No. 14), and Defendant's Reply in support of the Motion ("Reply," ECF No. 16). The Court vacated the hearing on the Motion and took the matter under submission pursuant to Civil Local Rule 7.1(d)(1). *See* ECF No. 15. Having considered carefully the Parties' briefing, their supporting evidence, and the law, the Court **DENIES WITHOUT PREJUDICE** Defendant's Motion and **DENIES** Defendant's supporting RJN, for the reasons that follow.

# BACKGROUND

Defendant "is a technology company that operates self-driving trucks and develops commercial ready Level 4 (SAE) fully autonomous driving solution[s] for the logistics industry." ECF No. 1 ("Compl.") ¶ 6. Specifically, as relevant here, Defendant retrofits trucks to operate as autonomous vehicles. Declaration of Jim Mullen in Support of Motion ("Mullen Decl.," ECF No. 13-1) ¶ 9; Opp'n at 6. Defendant is a California corporation headquartered in San Diego, California. Mot. at 4; Mullen Decl. ¶ 2; Opp'n at 5. Defendant also has facilities located in Tucson, Arizona, and Forth Worth, Texas. Mullen Decl. ¶ 2.

On August 24, 2018, pursuant to a written employment agreement, Plaintiff began working for Defendant as a Functional Safety Engineering Lead. Compl. ¶ 19; *see also id.* Ex. A ("Employment Agreement"). Plaintiff is a citizen and resident of the State of Arizona. Compl. ¶¶ 1, 4. Plaintiff primarily worked out of Defendant's Tucson, Arizona, location. Opp'n at 5; Declaration of John Lindland in Support of Opp'n ("Lindland Decl.," ECF No. 14-2) ¶ 6; Mot. at 3. Plaintiff spent some time, however, commuting to and attending meetings at TuSimple's San Diego headquarters. *See* Opp'n at 17 (claiming Plaintiff spent 14% of his time traveling to or in San Diego); Lindland Decl. ¶ 7 ("I was required to attend bi-weekly team meetings at TuSimple, Inc.'s San Diego headquarters"); Mot. at 4 (claiming Plaintiff spent approximately 7% of his employment at San Diego meetings). Plaintiff worked with design teams as well as with the Perception Team, led by C-level executive Xiaodi Hou. Compl. ¶¶ 19, 21–22. In December 2018, Mr. Hou requested that Plaintiff stop working with Mr. Hou's teams. *Id.* ¶ 22.

Mr. Hou's teams dictated the designs that Plaintiff worked on. *Id.* ¶ 23. In November 2018, Mr. Hou told Plaintiff "that the functional block diagram needed to be changed and Lindland had to cease his work until he was provided the new design to study. In other words, Hou wanted to circumvent the safety requirements and eliminate them from Lindland's work." *Id.* ¶ 25. Plaintiff hired an international consultant, Loretta Greer, to fill the role of quality manager, a role required to comply with "IATF 16949 (an automotive quality management system)." *Id.* ¶ 26. Plaintiff was rebuked by Chuck Price, Chief of

Product Development and Plaintiff's direct supervisor, for hiring Ms. Greer and having her implement quality management systems. *Id.* ¶ 27. In January 2019, the system was ready for study, but "on or about January 22, 2019 Hou asked Lindland to stop working on the Systems Analysis until further notice." *Id.* ¶ 29.

In February 2019, Plaintiff again began working with the Perception Team. *Id.* ¶ 30. That same month, "Mr. Price asked Lindland to draft simple forms that people could use to fill out in order to satisfy functional safety requirements," which "creat[ed] the appearance of performing work without 'conducting the work'." *Id.* ¶ 31 (emphasis removed). Plaintiff refused the request, "as it would have endangered the public" and "[Plaintiff] would have been responsible and liable." *Id.* ¶ 32.

In June 2019, Plaintiff was asked to stop his work "because the teams were not ready." *Id.* ¶ 34. Plaintiff was able to resume his work in August 2019. *Id.* ¶ 35. In September 2019, Mr. Hou ordered Plaintiff to again stop his work. *Id.* ¶ 36. In the interim, Plaintiff received a 4 out of 5 on his performance review and was complimented by Mr. Price "on how great his performances were and how everything was solid," and Plaintiff was told that both Mr. Price and Defendant "were pleased with [Plaintiff's] job." *Id.* ¶ 37. From September 2019 until February 2020, Plaintiff worked on various collateral projects and "generated solutions and ideas . . . to accelerate the process" of preparing the teams. *Id.* ¶ 38.

Messrs. Price and Hou offered "a lot of active resistance and no real support" regarding quality management issues. *Id.* ¶ 40. Ms. Greer ultimately resigned as a result, remaining on part-time until December 2019 to help transition a new quality manager. *Id.* In December 2019, Plaintiff was informed by e-mail, without explanation, that everyone who had previously reported to Plaintiff would now report to Mr. Price. *Id.* ¶ 43.

"In February 2020, Lindland, on his own initiative, started working with the algorithm teams." *Id.* ¶ 44. On February 21 and 22, 2020, "TuSummit World Domination 2020," a meeting, was held. *Id.* During the meeting, Plaintiff stressed the importance of Functional Safety and stated that he would not sign off on tests unless functional safety

analyses were completed. *Id.* ¶ 45. "Hou suggested that Lindland create forms and 'cut-and-paste' information into forms, and create the appearance that risk analysis occurred." *Id.* ¶ 46 (emphasis removed).

During a March 5, 2020 meeting with Mr. Hou, Mr. Hou "was concerned about Lindland having not completed his job," despite the fact that Plaintiff was "blocked by Hou" and "told to stop and throw everything away," resulting in months-long delays in his work. *Id.* ¶ 47. That same month, Mr. Price informed Plaintiff that Mr. Hou had asked Mr. Price to terminate Plaintiff. *Id.* ¶ 48. Mr. Price had refused, but he told Plaintiff to "approve whatever Hou would put in front of him." *Id.* (emphasis removed). Plaintiff responded that Defendant "needed to conduct both a complete analysis and real work." *Id.* (emphasis removed).

On March 18, 2020, Plaintiff was terminated. *Id.* ¶ 49. Plaintiff alleges that he was terminated because "[h]e was in charge of safety and he simply wanted to conduct his job duties, while Hou was only concerned with obtaining quick funding and money, regardless of the safety and functionality of the products." *Id.* (emphasis removed). Plaintiff was allegedly terminated for cause and accordingly did not receive his severance pay. *Id.* ¶ 50. Plaintiff also alleges that the timing of his termination was strategic in that he was fired before his share options vested. *Id.* ¶ 54.

On March 10, 2021, Plaintiff initiated this action by filing his Verified Complaint, which asserts claims for retaliation in violation of a public policy, wrongful termination, hostile work environment, breach of the implied covenant of good faith and fair dealing, and conversion. *See generally* Compl. Plaintiff invokes California law for each of his claims. *See generally id.* On April 19, 2021, Defendant answered. *See* ECF No. 5. On August 5, 2021, Defendant filed the instant Motion. *See* Mot. On November 8, 2021, Plaintiff filed a motion to bifurcate, which will be addressed in due course in a separate Order.

/ / /

/ / /

# REQUEST FOR JUDICIAL NOTICE

As an initial matter, Defendant requests that the Court take judicial notice of various sections of the Arizona Revised Statutes, several Arizona state and federal cases, and an Arizona model jury instruction. *See generally* RJN.

"Judicial notice under Rule 201 permits a court to notice an adjudicative fact if it is 'not subject to reasonable dispute.'" *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018) (quoting Fed. R. Evid. 201(b)), *cert. denied*, 139 S. Ct. 2615 (2019). "A fact is 'not subject to reasonable dispute' if it is 'generally known,' or 'can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.'" *Id.* (quoting Fed. R. Evid. 201(b)(1)–(2)). "Accordingly, '[a] court may take judicial notice of matters of public record.'" *Id.* (alteration in original) (quoting *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001)).

However:

> To use the judicial notice process to have the court consider other cases as legal authority is misguided, as Rule 201 applies to adjudicative facts and not legislative facts. The difference was explained in the comment to the rule: adjudicative facts "are simply the facts of the particular case" whereas legislative facts "are those which have relevance to legal reasoning and the lawmaking process, whether in the formulation of a legal principle or ruling by a judge or court or in the enactment of a legislative body." It is unnecessary to request that the court judicially notice published cases from California and federal courts as legal precedent; the court routinely considers such legal authorities in doing its legal analysis without a party requesting that they be judicially noticed. To the extent petitioner wants the existence of published or unpublished cases judicially noticed as adjudicative facts, doing so is of very limited value because the court can take notice that such decisions exist, but the court does not take judicial notice that those decisions are correct.

*Lucero v. Wong*, No. C 10-1339 SI PR, 2011 WL 5834963, at *5 (N.D. Cal. Nov. 21, 2011) (citing Fed. R. Evid. 201 (note to subdivision (a) for 1972 proposed rules)). The same reasoning applies to federal and state statutes and model jury instructions. *See Lathan v.*

*Ducart*, No. 16-16551, 2017 WL 3976705, at *1 (9th Cir. June 16, 2017) (denying as unnecessary request for judicial notice as to "statutes, regulations, or published opinions"); *Goins v. Cty. of Merced*, 185 F. Supp. 3d 1224, 1232 (E.D. Cal. 2016) (refusing to judicially notice model jury instruction). Accordingly, while the Court will, as appropriate, consider the legal authorities identified by Defendant in deciding the choice of law issue, the Court **DENIES** as unnecessary Defendant's RJN. *See Nguyen v. Cavalry Portfolio Servs., LLC*, No. 15-CV-0063-CAB-BLM, 2015 WL 12672149, at *2 (S.D. Cal. Feb. 20, 2015).

## MOTION TO DETERMINE CHOICE OF LAW

### I.     Legal Standard

"In a federal question action where the federal court is exercising supplemental jurisdiction over state claims, the federal court applies the choice-of-law rules of the forum state—in this case, California." *Paracor Fin., Inc. v. Gen. Elec. Cap. Corp.*, 96 F.3d 1151, 1164 (9th Cir. 1996) (citations omitted). The same is true in diversity cases. *Roberts v. Levine*, No. 19-CV-567-WQH-BLM, 2019 WL 5650626, at *5 (S.D. Cal. Oct. 31, 2019) (citing *Fields v. Legacy Health Sys.*, 413 F.3d 943, 950 (9th Cir. 2005)). "California resolves choice-of-law questions using 'governmental interest analysis' . . . entail[ing] three steps." *McGhee v. Arabian Am. Oil Co.*, 871 F.2d 1412 (9th Cir. 1989) (citations omitted). "California's choice of law rules state that California will apply its own rule of decision unless a party invokes a law of a foreign state that will further the interest of the foreign state." *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. 10-05625 SI, 2013 WL 6327490, at *2 (N.D. Cal. Dec. 3, 2013) (quoting *Paulsen v. CNF Inc.*, 559 F.3d 1061, 1080 (9th Cir. 2009)) (internal quotation marks omitted).

"Under the first step, the party invoking foreign law must demonstrate that the foreign law is materially different from California law." *Id.* "In the second step, that party must show that the foreign state has a legitimate interest in having its own law applied to the case. If only one jurisdiction has a legitimate interest in the application of its rule of decision, there is a 'false conflict' and the law of the interested jurisdiction is applied." *Id.* (quoting *CRS Recovery Inc. v. Laxton*, 600 F.3d 1138, 1142 (9th Cir. 2010)) (internal

quotation marks omitted). "Only if more than one state has a legitimate interest must the court proceed to the third step. In the final step the court undertakes a comparative impairment analysis to determine the relative commitment of the respective states to the laws involved . . . the history and current status of the states' laws and the function and purpose of those laws." *Id.* (citing *CRS Recovery Inc.*, 600 F.3d at 1142; *Wash. Mut. Bank, FA v. Superior Court*, 24 Cal. 4th 906, 920 (2001)) (internal quotation marks omitted) (ellipses in original). "Because California evinces a 'general preference for applying its own law,' the impairment analysis is slightly weighted in favor of applying California law." *Id.* (quoting *Engel v. CBS Inc.*, 981 F.2d 1076, 1081 (9th Cir. 1992)).

## II. Analysis

As an initial matter, the Court notes that a standalone motion to determine choice of law is somewhat unusual. Generally speaking, this issue is raised as part of or simultaneously with a motion to dismiss—*see, e.g.*, *Czuchaj v. Conair Corp.*, No. 13-CV-1901-BEN RBB, 2014 WL 1664235 (S.D. Cal. Apr. 18, 2014); a motion for class certification—*see, e.g.*, *Church v. Consol. Freightways*, No. C-90-2290 DLJ, 1992 WL 370829 (N.D. Cal. Sept. 14, 1992); a motion for summary judgment—*see, e.g.*, *Arrowood Surplus Lines Ins. Co. v. Paul Ryan Assocs., Inc.*, No. CV 13-00505 LEK-KSC, 2014 WL 12597419 (D. Haw. Oct. 31, 2014); or as a motion in limine—*see, e.g.*, *Jenkins v. Whittaker Corp.*, 545 F. Supp. 1117, 1117 (D. Haw. 1982); *Fid. Nat. Fin., Inc. v. Friedman*, No. CV 06-4271 CAS JWJX, 2009 WL 2410829 (C.D. Cal. Aug. 3, 2009). Here, Defendant elected to answer the Verified Complaint rather than move to dismiss on the basis of the instant choice of law issues, and Defendant provides no reason as to why this issue needs to be resolved at this particular juncture in the litigation.

While courts can and do determine choice of law issues as early as motions to dismiss—*see, e.g.*, *Hamby v. Ohio Nat. Life Assur. Corp.*, No. CIV. 12-00122 JMS, 2012 WL 2568149, at *2 (D. Haw. June 29, 2012) ("[C]ourts need not wait for discovery before conducting choice of law analyses where the pleadings, construed in the plaintiff's favor, contain all necessary facts.") (citations omitted)—California's governmental interest

approach requires a case-by-case, fact-intensive analysis of whether the laws of each asserted jurisdiction are materially different and, if so, the interests of each jurisdiction and how and to what extent they would be impaired. *See Kanfer v. Pharmacare US, Inc.*, 142 F. Supp. 3d 1091, 1107–08 (S.D. Cal. 2015). Accordingly, if a court finds that a fuller factual record is needed to make this fact-specific inquiry and assess these potential interests, it will defer the choice of law determination until summary judgment or even trial. *See, e.g.*, *In re Apple Inc. Device Performance Litig.*, 386 F. Supp. 3d 1155, 1170 (N.D. Cal. 2019) (deferring choice of law determination until later stage of litigation given that "the record and the parties' briefing are inadequate at this stage"); *MacDougal v. McCarty*, No. CV-14-00133-PHX-SRB, 2015 WL 13333691, at *2 n.1 (D. Ariz. June 29, 2015) (noting, in deciding motions for summary judgment, that choice of law motion filed in pleading stage was denied as premature and that defendant had filed a renewed choice of law motion after the filing of summary judgment motions); *St. Paul Mercury Ins. Co. v. Crawford & Co.*, No. LACV1608462JAKJPRX, 2017 WL 5891047, at *3–4 (C.D. Cal. June 6, 2017) (denying motion as to choice of law issue as premature and without prejudice to reraising the issue on a developed factual record).

Here, the Court is hesitant, on the record presently before it, to make a definitive choice of law determination. First, the California Supreme Court has cautioned that, "when it comes to the regulation of interstate employment, it is not sufficient to ask whether the relevant law was intended to operate extraterritorially or instead only intraterritorially, because many employment relationships and transactions will have elements of both. The better question is what kinds of California connections will suffice to trigger the relevant provisions of California law." *Ward v. United Airlines, Inc.*, 9 Cal. 5th 732, 752 (2020). The California Supreme Court has further noted that "the connections that suffice for purposes of one statute may not necessarily suffice for another." *Id.* Indeed, in *Sullivan v. Oracle Corp.*, 51 Cal. 4th 1191, 1201 (2011), the California Supreme Court noted that "the case before us presents no issue concerning the applicability of any provision of California wage law other than the provisions governing overtime compensation," and "one cannot

necessarily assume the same result would obtain for any other aspect of wage law." Thus, the Court finds the Parties' cursory analysis of the issue of the extraterritorial application of multiple provisions of California's labor laws wanting.

Second, in light of the foregoing, the Court finds that a fuller factual record as to where the relevant decisions were made and actions occurred is necessary to properly undertake the comparative impairment analysis and assess both California's and Arizona's interests in having their rule of decision applied. As just one example, neither Party addresses where Mr. Price, Plaintiff's direct supervisor, was located—whether in California, Arizona, or elsewhere. It appears, based on e-mails submitted by Defendant, that Mr. Price may have operated primarily out of Defendant's San Diego location, but the Court is loath to resort to inferences in lieu of facts, particularly given that neither Party has provided any explanation as to why the matter of choice of law requires urgent resolution. *See* Mullen Decl. Ex. D (e-mail from Chuck Price providing San Diego address in signature block). A clearer and fuller understanding of the locations involved in the various acts grounding Plaintiff's claims is needed to correctly assess the choice of law issues.

Accordingly, at this juncture, the Court finds that Defendant has failed to meet its burden to show that the law of a foreign jurisdiction should apply and **DENIES** the Motion, **WITHOUT PREJUDICE** to Defendant renewing the issue when the factual record is complete.

## CONCLUSION

In light of the foregoing, the Court **DENIES WITHOUT PREJUDICE** Defendant's Motion (ECF No. 13) and **DENIES** Defendant's supporting Request for Judicial Notice (ECF No. 13-2).

**IT IS SO ORDERED.**

Dated: March 8, 2022

Hon. Janis L. Sammartino
United States District Judge