UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN LINDLAND, an individual,<br><br>　　　　　　　　　　　Plaintiff,<br><br>v.<br><br>TUSIMPLE, INC.,<br>a California corporation; and<br>DOES 1–100, inclusive,<br><br>　　　　　　　　　　　Defendants. | Case No.: 21-CV-417 JLS (MDD)<br><br>**ORDER DENYING WITHOUT PREJUDICE PLAINTIFF'S MOTION TO BIFURCATE AND DENYING AS MOOT DEFENDANT'S EVIDENTIARY OBJECTIONS**<br><br>(ECF Nos. 23, 28) |

　　　　Presently before the Court is Plaintiff John Lindland's ("Plaintiff" or "Mr. Lindland") Motion to Bifurcate ("Mot.," ECF No. 23). Also before the Court are Defendant TuSimple, Inc.'s ("Defendant" or "TuSimple") Opposition to ("Opp'n," ECF No. 25) and Plaintiff's Reply in support of ("Reply," ECF No. 26) the Motion, as well as Defendant's Amended Evidentiary Objections ("Evid. Objs," ECF No. 28).[1] The Court vacated the hearing on the Motion and took the matter under submission pursuant to Civil Local Rule 7.1(d)(1). *See* ECF No. 29. Having considered the Parties' briefing and the

/ / /

---

[1] Defendant filed evidentiary objections on December 28, 2021 (ECF No. 27) and amended evidentiary objections later the same day (ECF No. 28). The Court treats the originally filed evidentiary objections as withdrawn and considers only the later-filed document in this Order.

1

law, the Court **DENIES WITHOUT PREJUDICE** Plaintiff's Motion and **DENIES AS MOOT** Defendant's Evidentiary Objections.

## BACKGROUND

The Court thoroughly recounted the factual and procedural background of this matter in its Order Denying Without Prejudice Defendant's Motion for Order for Choice of Law Determination (ECF No. 31). The Court incorporates by reference the background as set forth therein and outlines below only those facts relevant to the instant Motion.

Defendant hired Plaintiff on or about August 24, 2018, as a Functional Safety Engineering Lead. *See* ECF No. 1 ("Compl.") ¶ 19; *see also* ECF No. 23-1 (Declaration of John Lindland in Support of Motion ("Lindland Decl.")) ¶ 3. Plaintiff was offered stock options prior to accepting Defendant's job offer. Lindland Decl. ¶ 4. The stock options were "to vest on a three-year cliff vesting schedule in the amount of 30% after [Plaintiff's] first year of employment, 30% after [his] second year of employment, and 40% after [his] third year of employment." *Id.* Plaintiff's employment contract provides, in relevant part:

> Upon approval by our Board of Directors, $150,000 worth of share options, subject to all required taxes and withholdings, will be granted to you with 3-year-cliff vesting schedule as of commencement of your employment with TuSimple. The number of share options offered will be calculated upon the then valuation of TuSimple on the Valuation Date, i.e., six (6) months after the actual start date of your employment.

*Id.* Ex. A § 6. Defendant's Board of Directors approved the stock options after Plaintiff's termination date. *Id.* ¶ 4. Plaintiff represents that "[r]eceiving stock options was a **key** determination in [his] decision to accept employment with [Defendant]." *Id.* ¶ 5 (emphasis in original).

On February 11, 2020, Plaintiff received an e-mail from Xin Zhao, Defendant's in-house counsel, titled "Your Equity Incentive Awards." *Id.* Ex. B. The e-mail instructed Plaintiff to "[p]lease let us know if you would like to select Options or SVAs for your equity incentive. If you are granted Options, your exercise price would be $2.43 per share." *Id.* Plaintiff elected to receive stock options. *Id.* ¶ 7.

|   |   |
|---|---|
| 1 | Plaintiff's employment with Defendant ended on or about March 18, 2020.  Compl. |
| 2 | ¶ 49.  Plaintiff contends the termination was pretextual and its timing strategic to avoid the |
| 3 | payment of his stock options.  *Id.* ¶¶ 50, 54.  Plaintiff contends that "[a]t no time were [his] |
| 4 | 30% of vested stock options provided to [him]."  Lindland Decl. ¶ 9.  The Parties' |
| 5 | respective experts heavily dispute the value of the vested portion of the stock options.  *Id*. |
| 6 | ¶ 5; *see also* Mot. at 2.[2] |
| 7 | In this action, Plaintiff asserts claims against Defendant for retaliation in violation |
| 8 | of a public policy, wrongful termination, hostile work environment, breach of the implied |
| 9 | covenant of good faith and fair dealing, and conversion.  *See generally* Compl.  He |
| 10 | potentially seeks the full value of his share options as damages.  *See id.* at Prayer. |

## LEGAL STANDARD

"For convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues[.]"  Fed. R. Civ. P. 42(b).  The rule "confers broad discretion upon the district court to bifurcate a trial[.]"  *Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080, 1088 (9th Cir. 2002).  Factors relevant to bifurcation include "[1] avoiding prejudice, [2] separability of the issues, [3] convenience, [4] judicial economy, and [5] reducing risk of confusion."  *Bates v. United Parcel Serv.*, 204 F.R.D. 440, 448 (N.D. Cal. 2001) (citation omitted).  The moving party carries the "burden of proving that the bifurcation will promote judicial economy and avoid inconvenience or prejudice to the parties."  *Spectra–Physics Lasers, Inc. v. Uniphase Corp.,* 144 F.R.D. 99, 101 (N.D. Cal. 1992).

"Reverse bifurcation of liability and damages is a sub-species of bifurcation most often employed in large, complex product liability cases," and "is most useful where the parties have excellent information about the likelihood of success on the issue of liability and the real sticking points are the individual issues of causation and damages."  *STC UNM*

---

[2] In citing to Plaintiff's Motion, the Court refers to the blue numbers stamped in the upper righthand corner.

*v. Intel Corp.*, No. 10-CV-1077 RB/WDS, 2011 WL 7562686, at *1 (D.N.M. Dec. 22, 2011) (citations and internal quotation marks omitted).

## ANALYSIS

Plaintiff seeks to bifurcate the trial into two phases. In the first phase, Plaintiff seeks to establish the value of the 30% of his stock options he claims were vested at the time of his termination. Mot. at 11–12. This phase would rely primarily on expert testimony regarding the proper calculations. *Id.* at 12. Plaintiff waives his right to a jury trial on this issue. *Id.* at 11. The second phase would focus on Defendant's purported liability for wrongful termination and will focus on evidence of Defendant's allegedly retaliatory motives. *Id.* at 12–13. Assuming Defendant is found liable in the second phase, Plaintiff would then seek to recover the remaining 70% of his stock options that would have vested but-for Defendant's wrongful termination of Plaintiff. *Id.* at 13.

Plaintiff argues these "issues are readily separable." *Id.* at 14. Plaintiff claims bifurcation will support economy as he is willing to dismiss the remainder of this action should his expert witness's calculation of the value of the stock options already vested be adjudged correct by the Court, which could moot the proposed second phase. *Id.* at 13. He also claims that "determination of the damages issue first would serve to expedite the liability phase as to the damages Plaintiff seeks," as "a jury would not be required to calculate various valuation methods and would not be required to consider damages until the appropriate time." *Id.* at 14. Plaintiff claims bifurcation will promote convenience and judicial economy since "the parties need not waste the court's limited resources in presenting an issue to a jury that can easily be determined by the court." *Id.* at 15. Plaintiff claims that, absent "the proper calculation of the vested Stock Options, Plaintiff will be unable to ascertain the exact sum of damages he seeks in the second trial phase, which will needlessly confuse and mislead a jury, let alone the lawyers." *Id.* at 13. Plaintiff contends that the valuation issues would confuse the jury and would potentially prejudice him "if he argues one number, Defendant argues another, and the jury subsequently makes a decision based on a number that is not the final number used to calculate the award." *Id.* at 15–16.

Finally, Plaintiff argues that he will be prejudiced if the liability phase precedes the damages phase "in that the outcome of the amount of Plaintiff's damages will affect the relief afforded to Plaintiff." *Id.* at 16.

Conversely, Defendant argues that "damages are interwoven with [the issue] of liability," and the Complaint does not contain "any separate discernable claim for stock options or the valuation of stock options that can be bifurcated from any of the other claims or issues in the Complaint." Opp'n at 6. Indeed, Plaintiff's fifth claim is for conversion of his stock options, "which is an intertwined issue that is being proposed to be bifurcated." *Id.* at 7. Defendant further contends that "great inconvenience would be involved in determining Plaintiff's potential damages requested as set forth in the Motion, without knowing whether his first, second, and third options were vested – a determination that can only be made *after* deciding whether Plaintiff was wrongfully terminated." *Id.* Defendant suggests that, while trying equitable issues before legal issues or liability before damages is supported by authority, Plaintiff's request to try damages first is not. *Id.* at 8 ("As much as it pains me to say, the bifurcation requested and suggested by Plaintiff is borderline absurd."). Determining liability first could forego the need to assess damages at all. *Id.* at 8–9. Defendant argues that "two trials, multiple decisions, having its expert during both trials, and having to handle an overlap of related issues . . . will result in increased litigation costs" and could result in inconsistent judgments. *Id.* at 8. Finally, Defendant argues that jury confusion is not a concern, as the jury, once guided by experts in the relevant valuation methods, easily could compute the value of the stock options. *Id.* at 9.

As noted previously, "[a]ddressing the damages stage ahead of the liability stage, or 'reverse bifurcation,' is less common" in bifurcated matters. *Cocina Cultura LLC v. State*, No. 3:20-CV-01866-IM, 2021 WL 3836840, at *10 (D. Or. Aug. 27, 2021) (citing, *inter alia*, Wright & Miller, 9A Fed. Prac. & Proc. Civ. § 2390 (3d ed.)). Indeed, it is "a mechanism other courts have labeled 'extraordinary' and 'drastic.'" *STC UNM*, 2011 WL 7562686, at *2 (citation omitted). Thus, "while so-called reverse bifurcation has found some favor in the arena of complex personal injury torts, it remains relatively uncommon

in ordinary litigation." *Nye v. Ingersoll Rand Co.*, No. CIV. 08-3481 DRD, 2011 WL 4017741, at *3 (D.N.J. Sept. 8, 2011) (footnotes omitted).

The Court finds that, on the record presently before it, Plaintiff has not carried his burden of proving that the Rule 42 factors favor bifurcation. Given Plaintiff's representation that the stock option valuation issue "is taking 95% of the time we are spending on this case," Mot. at 3, it is not clear how determining this issue first will expedite or economize this action or promote convenience. Nor has Plaintiff established that bifurcation is necessary to avoid prejudice given that Plaintiff has not convinced the Court that proper jury instructions would fail to alleviate any potential prejudice or confusion. Even assuming bifurcation were appropriate, the Court is not convinced that here, where liability appears hotly contested, reverse bifurcation is an appropriate mechanism. Plaintiff provides no sound justification as to why the issue of liability could not be determined first and the issue of damages second. Accordingly, the Court **DENIES** Plaintiff's Motion at this time.[3]

## CONCLUSION

In light of the foregoing, the Court **DENIES** Plaintiff's Motion (ECF No. 23), **WITHOUT PREJUDICE** to Plaintiff renewing his motion after pretrial motion practice has been completed, and **DENIES AS MOOT** Defendant's Evidentiary Objections (ECF No. 28).

**IT IS SO ORDERED.**

Dated: April 5, 2022

Hon. Janis L. Sammartino
United States District Judge

---

[3] Defendant argues that the Court should strike and/or not consider the Declaration of Stefano Riznyk in Support of Plaintiff's Reply ("Riznyk Decl.," ECF No. 26-1) and the two exhibits attached thereto because they are not responsive to the arguments made in Defendant's Opposition and thus are new arguments and evidence not properly raised in a reply brief. Evid. Objs. at 3. Given that the Court did not rely on the Riznyk Declaration or the attached exhibits in ruling on this Motion, the Court **DENIES AS MOOT** Defendant's Evidentiary Objections.