UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN LINDLAND,<br><br>　　　　　　　　　Plaintiff,<br><br>v.<br><br>TUSIMPLE, INC. et al.,<br><br>　　　　　　　　　Defendants. | Case No.: 3:21-cv-417-JES-MDD<br><br>**ORDER:**<br><br>**(1) DENYING MOTION FOR RECONSIDERATION AND**<br><br>**(2) GRANTING MOTION FOR SANCTIONS**<br><br>**[ECF Nos. 64, 65]** |

　　Presently before the Court is Plaintiff John Lindland's ("Plaintiff") Motion for Reconsideration ("Motion"). Defendant TuSimple ("Defendant") opposes the motion and has filed a Motion for Sanctions asking for attorney's fees. Based upon the pleadings and for the reasons set forth below, the Court **DENIES** Plaintiff's Motion for Reconsideration and **GRANTS** Defendant's Motion for Attorney Fees.

## I.　BACKGROUND

　　Plaintiff initiated this action and filed a complaint asserting causes of action for: (1) Retaliation in Violation of a Public Policy; (2) Wrongful Termination; (3) Hostile Work Environment; (4) Breach of Implied Covenant of Good Faith and Fair Dealing; and (5) Conversion. ECF No. 1. Defendant submitted its Motion for Summary ("MSJ") on

1

1  May 28, 2022. ECF No. 37. Plaintiff filed its opposition to Defendant's MSJ ("Opp to
2  MSJ") on January 14, 2022 (ECF No. 53) and Defendant filed its reply on July 21, 2022.
3  ECF No. 56. On December 19, 2022, the Court issued an Order Re: Defendant's Motion
4  for Summary Judgment ("Order"). ECF No. 37. The Court granted summary judgment
5  for four causes of action: retaliation, hostile work environment, breach of implied
6  covenant of good faith and fair dealing, and conversion. The Court denied summary
7  judgment on the remaining claim. Plaintiff asks this Court to reconsider the Order to the
8  extent it dismissed his conversion claim, in particular his vested stock options. ECF No.
9  53.

## II.   MOTION FOR RECONSIDERATION

Southern District of California Civil Local Rule 7.1(i) permits motions for reconsideration "[w]henever any motion or any application or petition for any order or other relief has been made to any judge … has been refused in whole or in part." S.D. Cal. CivLR 7.1(i). Local Rule 7.1(i)(2) permits motions for reconsideration within "twenty-eight (28) days of the entry of the ruling, order or judgment sought to be reconsidered." S.D. Cal. CivLR 7.1(i)(2). However, the party seeking reconsideration must show "what new or different facts and circumstances are claimed to exist which did not exist, or were not shown, upon such prior application." *Id.*

A motion for reconsideration may also be treated as a motion to alter or amend a judgment under Rule 59(e) if, as here, it is filed within twenty-eight days of entry of judgment. *See Am. Ironworks & Erectors, Inc. v. N. Am. Constr. Corp.*, 248 F.3d 892, 898-99 (9th Cir. 2001). But a district court may grant a Rule 59(e) motion only if it "is presented with newly discovered evidence, committed clear error, or if there is an intervening change in the controlling law." *Wood v. Ryan*, 759 F.3d 1117, 1121 (9th Cir. 2014) (citations omitted). Reconsideration is an "extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources." *Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000). As such, a Rule 59(e) motion "should not be granted, absent highly unusual circumstances." *Allstate Ins. Co. v. Herron*,

634 F. 3d 1101, 1111 (9th Cir. 2011); *see also Reeder v. Knapik*, No. 07-cv-362-L(LSP) 2007 WL 2088402, at *2 (S.D. Cal. July 18, 2007) ("A motion to reconsider is not another opportunity for the losing party to make its strongest case, reassert arguments, or revamp previously unmeritorious argument."); *Campion v. Old Republic Home Protection Co, Inc.*, No. 09-CV-00748-JMA(NLS) 2011 WL 1935967, at *2 (S.D. Cal. May 20, 2011). "A motion for reconsideration may not be used to get a second bite at the apple." *Id.* at *1.

Plaintiff's motion for reconsideration was timely filed. Plaintiff argues reconsideration is warranted here because the Order is clearly erroneous, as it (1) "decides issues not before the court;" (2) "fails to substantively address whether Defendant wrongfully converted Plaintiff's interest in the remaining 70% of unvested stock options," (3) the Order's "findings are not supported by the record," and (4) the "Order results in a manifest injustice by depriving Plaintiff of his rightfully vested property." Motion at 15, 17, 21.

"A finding is 'clearly erroneous' when although there is evidence to support it, the … court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *In re Banks*, 263 F.3d 862, 869 (9th Cir. 2001) (citing *Anderson v. Bessemer City*, 470 U.S. 564, 573 (1985)). The Court will address each of Plaintiff's contentions below.

### A. The 30% Vested Stock Options Were Before the Court and the 70% Unvested Stock Options Were Addressed by the Court

Plaintiff argues that the 30% vested stock options were not before the Court. Specifically, Plaintiff argues that the 30% vested stock options were not alleged in Plaintiff's complaint. Plaintiff argues that he intentionally excluded the 30% vested stock options from the complaint and that the Order therefore decided an issue not before the Court. Plaintiff provided a copy of the complaint with the track changes function to support this argument. Motion at 10, Exhibit A. However, in the verified complaint, in his prayer for relief, Plaintiff requested the "full 150,000 share options at the strike price

determined as per the employment contract." Compl. ¶ 23. Further, throughout Plaintiff's Opp to MSJ, Plaintiff repeatedly argued the validity of the 30% vested stock options. For example:

> "Turning to the language of the Employment Contract itself, Plaintiff was entitled to '$150,000 worth of share options,' which were to be 'granted to [Plaintiff]' on a three-year cliff vesting schedule." Opp to MSJ at 26.
>
> "It is undisputed, and Defendant agrees, that at the time of his termination, Plaintiff was entitled to the vested thirty percent of the stock options provided to him." Opp to MSJ at 29.
>
> "Plaintiff was therefore entitled to immediate possession of the vested stock options, but at no time was he provided, nor could he have been provided, the opportunity to exercise them." Opp to MSJ at 29.
>
> "Defendant intentionally drafted contractual language that prevented Plaintiff from being able to exercise the thirty percent of vested stock options prior to the approval of Defendant's Board of Director's." Opp to MSJ at 30.
>
> "Plaintiff was immediately entitled to the thirty percent of stock options that had vested, at minimum, at the time of his termination, and Defendant wrongfully disposed of these stock options by preventing Plaintiff from ever having the opportunity to exercise them." Opp to MSJ at 30.
>
> "Accordingly, Plaintiff was damaged insomuch as he never, and could never, recover the value of the vested stock options." Opp to MSJ at 30.
>
> "Summary judgment cannot be granted as to Plaintiff's fifth cause of action because it is undisputed that Plaintiff was entitled to the stock options that had vested …" Opp to MSJ at 30.
>
> "Genuine material facts are in dispute regarding … the thirty percent of vested stock options that [Plaintiff] had acquired at the time of his termination." Opp to MSJ at 31.

It appears based on the complaint and Plaintiff's own arguments opposing the motion for summary judgment that the 30% vested stock options were indeed alleged in the complaint and further argued by Plaintiff in opposing the motion for summary judgment. As such, the 30% vested stock options were before the Court.

Further, the Order clearly states, "a reasonable jury could not find that Defendant committed a wrongful act which disposed Plaintiff of any property right. Defendant's motion for summary judgment is granted with respect to Plaintiff's fifth claim for conversion." Order at 18. This clearly shows that the Court addressed all claims of conversion pertaining to vested and unvested stock options. The motion for

reconsideration cannot be granted on this ground as the court is not left with the definite and firm conviction that a mistake was committed.

### B. The Order's Findings Were Supported by the Record

Next, Plaintiff argues that the Order makes assumptions of fact not supported by the record. Plaintiff challenges the following statement, "In fact, Plaintiff admits he never exercised—or attempted to exercise—the 30% of vested options that were available to him upon the Board of Director's approval in May 2020." Order at 18. In his motion, Plaintiff argues that he attempted to exercise his 30% vested stock options the day of his termination. Motion at 19. Plaintiff also attached a letter sent to Defendant in his motion to assert the position that Plaintiff attempted to exercise his 30% vested stock options through counsel on May 13, 2020, notably before the board approval. Motion at 12, Exhibit C. Based on these items, Plaintiff argues that the Order's findings were not supported by the record.

Defendant's Board of Director's approved Plaintiff's 30% vested stock options on May 28, 2020. ECF No. 36, Declaration of Mandy Hexom ("Hexom Decl.") Ex. 6 at 37. As the Order correctly states, there was no evidence in the record that Plaintiff exercised or attempted to exercise his 30% vested stock options after the May 28, 2020, board approval. In Plaintiff's motion for reconsideration, he fails to present any newly discovered evidence that there were any attempts to exercise the 30% vested stock options after May 28, 2020, as the Order originally found. Instead, Plaintiff repeats arguments that were previously rejected by the court. As the Court noted, "Plaintiff has provided no evidence that he attempted to exercise his vested options or that Defendant wrongfully prevented him from doing so." Order at 18. The Order's findings were indeed supported by the record. The motion for reconsideration cannot be granted on this ground as the court is not left with the definite and firm conviction that a mistake was committed.

/ / /

/ / /

/ / /

### C. The Order Does Not Result in a Manifest Injustice

"A 'manifest injustice' is defined as 'an error in the trial court that is direct, obvious, and observable, such as a defendant's guilty plea that is involuntary or that is based on a plea agreement that the prosecution rescinds[.]'" *In re Oak Park Calabasas Condominium Ass'n*, 302 B.R. 682, 683 (C.D. Cal. 2003) (quoting Black's Law Dictionary (11th ed. 2019)). A manifest injustice does not lie when, "[w]hether through mistake, ignorance, or tactical maneuvering," the plaintiff places itself in the position of asking the court for reconsideration. *In re Dreyfus Mut. Funds*, No. 04-0128, 2006 WL 1699443, at *2 (W.D. Pa. June 20, 2006).

Plaintiff's entire argument to support this ground for reconsideration, including the declaration of counsel, Steven Riznyk, and the reply brief filed by Mr. Riznyk is based on statements allegedly made between the parties during settlement discussions. Plaintiff repeatedly and inappropriately argues these alleged statements throughout his motion for reconsideration. As Mr. Riznyk is well aware, settlement discussions between parties are not admissible evidence to either prove or disprove the validity or amount of a disputed claim. Fed. R. Evid. 408. A district court may only consider admissible evidence in ruling on a motion for summary judgment. *See* Fed. R. Civ. P. 56(e); *Moore v. Thomas*, 653 F. Supp. 2d 984, 991 (N.D. Cal. 2009) (citing *Orr v. Bank of America*, 285 F.3d 764, 773 (9th Cir. 2002). Mr. Riznyk appears to acknowledge this in his reply brief, but only addresses the concerns related to the letter he attached to his motion for reconsideration, not the repeated references to settlement discussions throughout his motion. The inclusion of such statements to support an argument is meritless and highly inappropriate. Therefore, the Court may not consider any of the purported settlement discussions proffered by Plaintiff in support of his motion for reconsideration. As such, there is no basis to support an argument of a manifest injustice.

Further, contradicting Plaintiff's assertions that Defendant agreed that the vested stock options were not in dispute, there are repeated references in the MSJ where Defendant indeed disputed the validity of the vested stock options. Defendant argued

repeatedly that Plaintiff's claim for conversion should fail because he failed to exercise the vested options. For example:

> "Plaintiff had no reason to believe that the stock options were not available to him. In fact, prior to Plaintiff's termination of employment, he received several emails and documentation about his stock options grant during his employment including receiving a document entitled, 'Comparison of Equity Awards,' dated February 2020 and a detailed Share Plan document." MSJ at 17.

> "On February 11, 2020, Plaintiff also received an employee-specific email from Xin Zhao (Registered In House Counsel) explaining his stock options grant. As set forth in the Employment Agreement and stock option plan documents, this stock option grant was conditioned on the following:
> - Board approval by TuSimple's Board of Directors
> - All vested options need to be exercised within 90 days after termination or vested options will be deemed cancelled.
> - Three-Year-Cliff Vesting Schedule.
> - Calculated upon the then valuation of TuSimple on the Valuation Date, i.e., six (6) months after the actual start date of your employment (February 27, 2019)." MSJ at 17-18.

> "On May 28, 2020, the TuSimple Board of Directors granted Plaintiff's stock options … in clear and unambiguous language as follows:
>
> Exhibit B
> Option Grants
>
> Nonstatutory Stock Option Grants:
>
> | Name of Optionee | No. of Shares | Vesting Commencement Date | Vesting Schedule | Exercise Price |
> |---|---|---|---|---|
> | John Lewis Lindland | 18,491 | 2018-08-27 | A | 2.43 |
>
> A = 3-year vesting schedule, 30% of total shares on the first year anniversary date of the Vesting Commencement Date, another 30% of total shares on the second year anniversary date of the Vesting Commencement Date, and the rest 40% of total shares vest on the third year anniversary date of the Vesting Commencement Date." MSJ at 18, Ex. 6 at Ex. B.

> "The unequivocal language in the stock option provision of the Employment Agreement, the written plan documents, and communications between Plaintiff and TuSimple regarding the stock options grant, demonstrate a failure to be able to establish that TuSimple wrongfully disposed Plaintiff of any property. In fact, an options grant must be exercised in order for Plaintiff to be able to receive any such shares or property." MSJ at 18.

> "If Plaintiff had exercised his options and TuSimple then failed to provide the shares or value of the sale of those shares from the purchase of the options, then there may be a claim for conversion." MSJ at 19.

> "Plaintiff never exercised the stock options in order to receive the shares of stock or money from the exercise of those options. There is no legal authority for the position that a stock options grant can be converted without exercising the options." MSJ at 20.

The Court rejects Plaintiff's argument that there was any clear error in the order granting summary judgment on the conversion claim. There was no error, much less any clear error, in the Court's ruling. The motion for reconsideration is **DENIED**.

### III. REQUESTS FOR ATTORNEY'S FEES

This motion did not present any new evidence and was not based on any change in the law or any clear error. It was an attempt by Plaintiff to repeat the same arguments and get a second bite of the apple. This motion presented meritless and inadmissible arguments.

The Court has the inherent power to impose sanctions. Chambers v. NASCO, Inc., 501 U.S. 32, 45 (1991). However, the Court's "inherent powers must be exercised with restraint and discretion." Advantacare Health Partners v. Access IV, 2004 WL 1837997, at *4, 2004 U.S. Dist. LEXIS 16835, at *12 (N.D. Cal. Aug. 17, 2004) (citing Roadway Exp., Inc. v. Piper, 447 U.S. 752, 764 (1980)).

The Local Rules for the United States District Court for the Southern District of California notes that "we expect lawyers to discourage and refuse to accept a role in litigation that is meritless or designed primarily to harass or drain the financial resources of the opposing party." Civ L. Rules 2.1(a)(2)(g). Also, "we expect lawyers to refrain from attributing to an opponent a position the opponent has not clearly taken … to be accurate in written communications intended to make a record … [and] we expect lawyers to conduct themselves so that they may conclude each case amicably with the opposing party." Civ L. Rules 2.1(a)(3)(e), (f), (m).

As mentioned above, Mr. Riznyk made inappropriate arguments based on inadmissible evidence and rehashed the same arguments made during the opposition to the motion for summary judgment. This motion was frivolous and meritless and not properly brought. Further, Mr. Riznyk violated the local rules of this court, attributing to Defendant a position they have not clearly taken and being inaccurate to the court in its motion. Finding that Plaintiff's motion for reconsideration was not properly brought and the local rules of court having been violated, the Court next considers Defendant's request for attorney's fees and costs incurred because of Mr. Riznyk's motion.

Based on the highly inappropriate arguments by Mr. Riznyk, the Court finds that Plaintiff has acted in bad faith, delaying, disrupting, and unreasonably extending the

1 litigation. Therefore, sanctions in the form of attorney fees are warranted. *See Matsumaru v. Sato*, 521 F. Supp. 2d 1013, 1016 (D. Ariz. 2007); *see also Chambers v. NASCO, Inc.* 501 U.S. 32, 45-46 (1991); *Leon v. IDX Sys. Corp.* 464 F.3d 951, 961 (9th Cir. 2006).

The Court will next turn to whether Defendant's request for fees and costs is reasonable. "Reasonableness is the benchmark for sanctions based on attorneys' fees." *Mirch v. Frank*, 266 Fed. App'x 586, 588 (9th Cir. 2008) (citing *Brown v. Baden* (*In re Yagman*), 796 F.2d 1165, 1184-85 (9th Cir. 1986)). In determining reasonable attorneys' fees, courts must follow a two-part "lodestar" approach. *See Intel Corp v. Terabyte Int'l*, 6 F.3d 614, 622 (9th Cir. 1993). First, the Court calculates the presumptively-reasonable lodestar figure by multiplying the hours reasonably spent on the litigation by a reasonable hourly rate. *See Mirch*, 266 Fed. App'x at 588 (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). Second, the Court considers whether an adjustment to the lodestar figure is merited based on various factors. *See Mirch*, 266 Fed. App'x at 588 (citing *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1212 (9th Cir. 1986)).

The Court has reviewed Defendant's motion for sanctions. Counsel Mandy Hexom has stated that her billed hourly rate is $245. Hexom Decl. ¶ 10. In her declaration, she mentioned that she spent a total of 6.5 hours on opposing Plaintiff's motion and another 4.4 hours drafting the declaration, the memorandum of points and authorities, notice of motion, and proposed order for the motion for sanctions. Hexom Decl. ¶¶ 10-11. That is a total of 10.9 hours at a billable rate of $245, equaling $2,670.50. The hourly rate is a reasonable rate and the amount of time spent on this motion, 10.9 hours, appears to be reasonable. Therefore, the Court orders that Plaintiff pay attorney's fees in the amount of $2,670.50 for the meritless and improper motion submitted.

/ / /
/ / /
/ / /
/ / /
/ / /

## IV. CONCLUSION

For the reasons discussed above, the Court:

(1) **DENIES** Defendant's motion for reconsideration;

(2) **GRANTS** Plaintiff's motion for sanctions in the amount of $2,670.50 in attorney fees to be paid to Defendant; and

(3) Plaintiff is directed to pay Defendant the amount awarded above.

**IT IS SO ORDERED.**

Dated: July 26, 2023

_____
Honorable James E. Simmons, Jr.
Unites States District Judge